Good morning. The first case is Sally Sanders v. Fred Williams and Mr. Bassey, I apologize, and sir, when you're ready, would you please begin your argument? I'm here this morning on behalf of the plaintiff appellant, Sally Sanders, the plaintiff fought for property in this case in July 31st, 2006, January of 2008, plaintiff had the property surveyed by surveyor Jerry Trover. In March 2009, the defendant removed the surveyor post, placed birdhouses in a brick flower box where the surveyor post had been. There had been some law enforcement called, the defendant asked permission to plant some strawberries in the brick flower box, permission was granted by the plaintiff. The plaintiff then brought this action against the defendant for an injunction and for civil trespass. The plaintiff's belief that there's been a misapplication of the law and that the judgment in the trial court was against the manifest way of the evidence. The plaintiff is seeking a reversal of the circuit court's decision and is asking this court to grant a judgment in favor of the appellant. The first argument is that in the law in Illinois on adverse possession is clear, the party seeking a judgment via adverse possession must prove by strict, clear and unequivocal evidence that they have satisfied all five elements of adverse possession. Hostile or adverse, actual, visible, notorious, exclusive, continuous, and under a claim of ownership. In Cagle v. Walter, the court tells us that these elements cannot be made out by implication or by inference. If we look at the first element of hostile, the defendant testified that the fence line was utilized by his parents and by both parties on the north and south of the fence line. This is in the record on page 117. But the defendant's family never possessed this portion of the property hostily or adversely to anyone. The testimony of the plaintiff proved that the defendant himself asked for permission to plant strawberries in a flower box near the plaintiff's survey marker. Was that disputed? I don't believe that it was disputed that the defendant asked permission to plant strawberries at the survey marker, no. The defendant cited a case, Joyner v. Jansen. I think the distinguishing factor in Joyner is that the boundary was visible and the boundary could be ascertained. It was a visible tree and a visible bush line in Joyner. In our case, there are remnants of an old fence in a severely wooded area. The remnants are not visible. They could not be ascertained. They are just remnants of a fence line. And they only extended to a certain part of the property, a red shed noted on the survey and noted by the witnesses, not the remainder of the property. The plaintiff submitted a group exhibit which showed the lack of visibility of the boundary of the remnants of the old fence. Even the plaintiff's surveyor, Jerry Trover, testified that the area where the remnants were were grown up and very wooded. In Joyner, the plaintiffs, they raked leaves, they mowed grass, they planted and removed trees, they shoveled snow, they even buried their family pet in the boundary area. They otherwise conducted general maintenance of the property. All the defendant did in this case is claim to have watched the trees grow. The defendant's witnesses testified that the area was so grown up that no one was planting in the wooded area or maintaining the wooded area. To be hostile or adverse, they would have had to have known it was hostile or adverse. They would have had to have been able to see the area that was hostile or adverse. The defendant also cited the case Beard v. Henn. The difference in Beard is that the adverse possessor, the court said, might have requested permission to enter the property. In the case at hand, in our case, the defendant requested permission to not only enter the land but to conduct an action on the land, to plant strawberries at the survey marker of the plaintiff. In Beard, the plaintiffs were using and maintaining the land in question. The court ruled no admissions or declarations contrary to their interest would divest them of their adverse possession once it had matured. The distinguishing factor in our case is that the property, from the day the property was deeded to the defendant, he did not continue to satisfy the elements of adverse possession. While adverse possession may or may not have matured during his parents' prior ownership, it did not continue on. And I will talk about continuous use later. But for his declaration of intent that's contrary to his interest, saying, I need to go onto your land, I would like permission to plant strawberries on your land, when he did not have an adverse possession interest matured at that time, distinguishes this case from Beard v. Henn. The next element is actual possession. The defendant's arguments are based on implication. The defendant is trying to imply that because the remnants of an old fence exist in a wooded area, that there must be a defined property line. But the possession must be actual. Cagle tells us it can't be made out by implication. It can't be made out by inference. As the evidence clearly shows, the defendant could not have possessed this area. It was grown up thick with woods. It was so thick, witnesses testified that no one could enter the wooded area. The defendant's testimony also revealed that he claimed actual possession by watching the trees grow. If the court allows this method of possession to satisfy the burden of proof for an adverse possession claim, I beg the question, have they lessened the strict element of adverse possession? If you can plant trees and watch them grow, have we opened up adverse possession to many more arguments? The defendant cited the case Chicago Title v. Darley and Bugner v. Chicago Title. But in Darley, distinguishing our case from Darley, the defendant in our case, he did not erect the fence. The testimony was that he did not know who erected the fence. He did not know who maintained the remnants of the fence. The defendant in our case did not pasture livestock. And the defendant did not cut, bale, or sell hay. The defendant himself only watched trees grow from 1998 to the time this case was filed in 2009, distinguishing our case from Darley. Distinguishing our case from Bugner, where everyone in the neighborhood in Bugner was fully apprised of the possession of the adverse possessor. The defendant's witnesses in this case testified that they never witnessed the defendant ever exercising any control on the north side of the remnants, with the exception of where his home was. Therefore, how could anyone in the neighborhood be apprised of the possession of the wooded area? The next element of visibly notorious and exclusive, the defendant's witnesses testified that the defendant, nor anyone else, was ever witnessed exercising any control on the north side of the remnants. It was never visible. It couldn't be. It was too wooded. The remnants were in disarray. The defendant cites Beverly Trust v. Dekowski, and I think the distinguishing factors in Dekowski is that the adverse possessor constructed a fence. He put permanent pool equipment inside of his fence. After years went by in Dekowski, shrubs grew up along the fence and it was harder to see the fence, but the fence was always there. The pool equipment was always there. It was always maintained by the possessor, by the adverse possessor. In our case, the defendant doesn't know who constructed the fence. The defendant did not maintain the fence, according to his testimony, and the fence did not enclose any permanent structure. Dekowski cites a case, Howard v. Stratton Chemical Co., and I think it's a very important sentence that they cite. They cite, a fence is notice of actual occupancy. They do not state remnants of an old fence are notice of actual occupancy. Continuous use and maintenance. To me, this is the one element that has not been satisfied at all. The defendant himself testified he never maintained the wooded area. He did not maintain the remnants of the old fence. The plaintiff's group exhibit shows the lack of maintenance in the disputed area. The trash and debris piled up. Damage from the May storm of 2008 piled up. Not only was there no maintenance, but the use must be continuous. The use must have been continuous from 1998 to the present day, and it was not. McNeil v. Ketchins tells us, in order to destroy the continuity of possession, the vacancy must not be merely occasional, such as occurs in every case where a party for some cause shuts up his property for a short time or for a long time. In McNeil, I believe they shut up their property for one month, and the court said that is not going to sever the continuous use. But when the defendant was deeded the property from his parents in 1998, all he had been doing since then was planting trees and watching them grow. This does not rise to the level of continuous possession. I thought the defendant claimed that his family actually maintained and repaired portions of the old fence line and tree line and erected this red shed, and that was part of their claim of adverse possession. I believe that is correct, Your Honor. Where I think this is distinguishable is that his argument is that his parents did this. When he was deeded the property in 1998, there may or may not be an argument that adverse possession had matured at that time, but to tack on to the parents' time, the use must have remained continuous. What we're arguing is that the continuity was severed by him never maintaining the property, by him only watching the trees grow. The defendant, not the defendant's family, no longer resided at the property. I believe his parents had passed away. The defendant never continued the adverse possession. In Cable, as I cited in my brief to the argument of continuous use, the court did not allow the claim for adverse possession because the plaintiff was unable to provide sufficient evidence of actual possession during a specific period of time, I believe seven years, such as in our case. The defendant was deeded the property in 1998. We have 11 years until the case was filed in 2009, similar to the Cable holding. The second argument that we bring is that the court erred in concluding that the defendant was in actual possession of the property and that the defendant paid taxes on the disputed parcel in excess of seven years under color of title under the statute. 735 ILCS 513-109. The defendant's witnesses testified, as we look at the two elements that are required for that statute for adverse possession, the defendant's witnesses testified that they never saw anyone exerting control on the fence line or 15 feet north of the fence line. The property was so grown up, no one could exert control over the remnants of the old fence line without committing substantial work to the property, of which all the neighbors testified they were well aware of the grown-up area, as did the surveyor who testified to the grown-up area. The plaintiff's evidence also showed, when we discussed the issue of payment of taxes, her tax bill showed she was paying taxes on a quarter-quarter section. When that quarter-quarter section was surveyed by Jerry Trover, the survey posts were 13.3 feet north of the old fence remnants. The defendant presented a tax map from the tax assessor's office that was presented in conjunction with the 1922 survey, and the argument was made that the tax map that was presented that showed that the property line was at the wooded area, was north of the wooded area, was how the taxes were being assessed to the parcels. However, the assistant supervisor of assessments testified that the map that was used was incorrect and outdated, and that a newer map existed. The map was discredited at the trial court level. It was proven that the numbers on the map were incorrect. That's in the record, page 84. If a newer map exists, and if the old map is outdated, they did not present enough evidence to prove that they had paid taxes on that parcel for seven years. In fact, it's unclear whether both parties are paying taxes on the same wooded area in dispute. That's what it appears from the tax bills. The record also shows that the plaintiff may or may not be paying taxes on more than 10 acres for her quarter-quarter section, which would possibly imply that the wooded area is being taxed to the plaintiff and not to the defendant. It is unclear. The third and final argument is that the trial court granted the defendant the property of the adverse possession for the entire 13.3 feet, from the west line of the property to the east line of the property, ending at the railroad right-of-way. The defendant did not present any evidence of adverse possession of the defendant beyond the location of the red shed. As asked earlier, there was evidence presented that the defendant's family used the property east of the red shed, never the defendant and never since 1998. The defendant also did not present evidence that the old fence remnants extended in a straight line, extended beyond the red shed. In fact, there is testimony that the defendant's father put up a fence running north directly behind the red shed. That's in the record, page 132. More evidence that the remnants do not extend beyond the red shed and that the fence roll that was maintained or used during the defendant's family's possession did not extend beyond the red shed. The defendant's witnesses testified that the defendant's father used the property beyond the shed over 20 years ago to allow mules to roam and did not testify to that usage from 1998 to the present day. The defendant himself never used the property and the record on page 133 is where he testifies that he just let the trees grow. The defendant also is asking in his brief for this court to grant an adverse possession to the disputed parcel of land via boundary acquiescence. Yet this was never part of the defendant's counterclaim. The defendant cites McLeod v. Lambenon. The distinguishing factor in that case, in the event the court is to entertain this argument, the distinguishing factor in McLeod is that in McLeod there was a discernible hedge line beyond the survey line that the parties had used for many years. The hedge line was removed and an electric fence was put up with a very discernible point of beginning and a very discernible ending. In this case, we do not have that. We have our remnants that only extend so far. We have no idea where it would have began. We have no idea where it would have ended. There was no testimony presented. I think the glaring element to me in closing is that all the cases that we cited have a visible boundary, a hedge line, a fence, an electric fence. None of them have remnants of a fence cited. Some of them may have a wooded area, but they still speak to usage of that wooded area. Or, as I cited earlier, the case where they buried a pet in the area. We don't have that. We have an area of woods that was never used at least from 1998 to the present day. And we have no specific visible boundaries. We have no usage from 1998. Therefore, the plaintiff asks this court, the appellant asks this court, to overrule the trial court's decision and issue a judgment in favor of the plaintiff as requested in the brief. Thank you, Your Honors. Mr. Flynn. Please proceed. May it please the court. Good morning, Your Honors. My name is Andrew Flynn. Along with my co-counsel, Lynn Tetzla, we represent Mr. Preble in the appellant's matter. Your Honors, we are not here on an unusual matter this morning. In this case, an old fence and tree line divided two adjacent properties in Williamson County. Now, for at least 45 years prior to this cause of action, all the people living and working north of that line stayed to the north. And all the people living and working south of that line stayed to the south. Like most property disputes begin, this peaceful coexistence ended when a third party entered this matter and purchased one of the properties. In this case, the plaintiff, the appellant, purchased the property to the south of that line. And like many new property owners, she decided to have the property surveyed. It was then that we found out that the old fence and tree line was not the actual boundary between these two properties. Instead, the boundary was about 13 feet north of that old fence and tree line. About 13 feet. And so now we're here today, arguing over what has become the most expensive piece of property in Williamson County. Now, there are a couple issues that seem to be discussed this morning. First, whether Mr. Williams gained ownership of the property in dispute via adverse possession. And second, whether Mr. Williams gained ownership of this property via payment of taxes under foot cover type. Now, I'll begin with the first issue. And in order to acquire ownership of the property via adverse possession, five elements must be met, as we've just heard. A piece of property may be adversely possessed if the possession is hostile or adverse, actual, open, notorious, visible and exclusive, continuous, and under a claim of ownership. And all five of these elements must be established for a period of 20 consecutive years. Now, first, in order to prove the hostile or adverse element of adverse possession, one does not need to prove possession with ill will or anything like that. Instead, you need only show that you're asserting ownership over a piece of property that is incompatible with the true owner or with anyone else. And one's actions alone is sufficient to satisfy that hostile element. Now, in the present case, evidence showed that Mr. Williams and his family have committed several actions that sufficiently show that they are asserting ownership over the property at issue since moving there in 1962. Specifically, they have planted crops, raised mules, milked cow and cattle. They've used the land as pasture. They've hunted rabbit, planted trees, raised pecans and hazelnuts, and moved and utilized a portion of that property as a front yard. Now, they've also maintained a portion of that old fence entry line and have built a red shadow on that property. Now, these actions taken together were sufficiently hostile to indicate to the neighbors and the surrounding members of the community that Mr. Williams and his family were possessing that property. Now, this is illustrated by the testimony of three separate individuals who are familiar with this property. Now, all three members of this that testified all said that they believe that the property at issue belonged to Mr. Williams and his family dating back to the 1960s. Now, the witness testimony, along with the photographs and the evidence that was presented, clearly showed the circuit court judge, Judge Moore, what had happened and that it was sufficient to meet this burden. Now, opposing counsel discussed and tried to distinguish Joyner, which was cited in our briefs, and tried to say that this should not apply in this case because in Joyner there was a visible and ascertainable boundary. Now, that is the case. He's saying in our case there's not a visible and ascertainable boundary. Well, if that's the case, why did all, and the record is clear that all three witnesses, when talking about the old fence and tree line or old fence road or the old tree line by itself, all knew exactly what we were talking about and knew exactly what the property line was. Opposing counsel also discusses how there's merely old remnants of the fence in this case, and that's simply not true. Again, a group exhibit number seven shows clear pictures of pink tape tied to the thin wires of the fence going all the way back to the property. The fence is still in place. And as far as possible remnants that may or may not have been replaced, the evidence is clear that Mr. Williams' father replaced portions of the fence that had been deteriorated, thereby maintaining the fence and making sure it stayed in the same place. How do you dispute what your opponent, counsel, said that, while his parents may have established ownership by adverse possession, that this, your client, did not because he did not do the same types of activities. How do you respond to that? Well, Your Honor, in this case, a person acquires the title of their predecessor in title. Opposing counsel clearly stated that adverse possession may or may not have been obtained by his parents, Mr. Williams' parents. If that's the case, and Mr. Williams obtained the title from his parents, he obtained that adversely possessed property as well. So, if your position is that he does not need to continue this adverse possession, that it was complete eleven years prior? It's my position that it was mature before he acquired the property, but he did continue to possess the property in a meaningful way since 1998, in addition to that. Well, I understand that, both sides of it, but are you contending that if it was shown that he did not, and the evidence doesn't support that he continued to do it, do you feel you would still have an adverse possession claim? Yes, Your Honor. So, would the other side have to hold it adversely twenty years to get it back? Yes. Now, the opposing counsel also tried to distinguish a fear-free hand in this matter. In that case, the discussion was whether a permissive act, or asking for permission to enter onto one's land, is not hostile or adverse. In that case, the court held any admission or declaration against the party after the adverse possession had matured will not relinquish your title. In this case, if the adverse possession had already matured, and Mr. Williams did in fact ask for permission to plant strawberries, it is irrelevant. It is an admission and a declaration. I don't see any way to see a difference between an admission and declaration and asking him to do something. They seem to be synonymous, in my opinion. So, in this case, the evidence presented at the circuit court, with the supporting case law, clearly shows that Mr. Williams and his family have possessed the property in a hostile or adverse manner, thereby satisfying that first required element. Now, the second element, actual possession of the property, may be evidenced by improvements or other acts of dominion over the land if those acts sufficiently demonstrate to those residing in the immediate neighborhood who has the exclusive management and control of the land. Again, all of the actions I just mentioned, such as planting trees, growing pecans and hazelnuts, maintaining the fence, building a red shed, etc., raising animals, all those acts taken by Mr. Williams and his family on the property since 1962 were sufficient to demonstrate that they had exclusive management and control of the land. Again, by those three people who testified, all people familiar with the area, all recognize that they believe that the property to the north of that old fence and tree line belongs to Mr. Williams and his family. The opposing counsel tries to distinguish the cases we've cited, Darley and Bugner, stating that Mr. Williams has merely watched the trees grow. That's just not the case. While there were, based on the record, there were more activities that took place in the past, there's still several activities going on now. There is the planting of the trees. There is maintaining that front portion as a yard. There's the planting of the hazelnuts, or, excuse me, growing the hazelnuts and the pecans and things of that nature. So, again, based on the evidence presented, the witnesses, what they testified to, believing north of the old tree and fence line belonged to the Williams, believe that Mr. Williams has clearly established actual possession of the property. Now, third, the visible, notorious, and exclusive element required for adverse possession is, again, similar to previous elements we've just discussed, in that the correct test to determine this element is whether the community in the vicinity of the land could be apprised of Mr. Williams and his family's exclusive use and enjoyment. And, again, I know I'm being repetitive, but the evidence showed that the activities were sufficient to apprise the local community that Mr. Williams and his family were using, the only ones using and enjoying that property. My opposing counsel tried to distinguish Dukowski by saying that Dukowski, it was a different case, because they built a fence on the land, and they built a pool equipment on the land. But in this case, we didn't build the fence, but we maintained the fence. The fence was, of course, there when they moved there in 1962, but they maintained the fence. And they also built the red shed. Again, similar, pool equipment, building a red shed. Building a fence, maintaining a fence. Very similar cases, and they should not be distinguished for a mere difference between pool equipment and a red shed. Now, the fourth element of adverse possession of property must be for a continuous period of 20 years. And the continuity of possession may be had in many ways, including by enclosure, cultivation, the erection. The erection of dwellings or other improvements, and any use that clearly indicates that someone has appropriated that property for themselves. Now, in the present case, Mr. Williams and his family moved out of the property in 1962, over 45 years before this action arose. And during that time, again, they conducted several activities on the property. These actions, specifically the maintenance of the old fence, the planting of crops and trees, raising hazelnuts and pecans, and erecting a red shed, among others, clearly indicated that Mr. Williams and his family appropriated the property as their own for a period in excess of 20 years. Again, we've kind of discussed this before, but opposing counsel tries to state that since 1998, the possession of this property has been continuous. Again, I would say what I've just said, and that this case is similar to McNeill's, should not be distinguished, because the continuous possession does not need to continue on past 1998, if it has already matured. In the event that it had matured by 1998, Mr. Williams' use of the property has continued on since then, and is sufficiently old. Now, the final element of adverse possession requires the possession of property to be under a claim of ownership that is inconsistent with that of the true owner and anyone else in the world. And actions alone, again, can convey this, that one is trying to possess property adverse to the world. And as previously discussed, again and again, the evidence is clear that Mr. Williams and his family took several actions on the property that indicated their intent to claim this property as their own. And therefore, that element is easily met. Now, overall, the evidence presented at the circuit court clearly shows that Mr. Williams and his family satisfied all five elements of adverse possession. Now, the second issue today revolves around acquiring possession of the property via payment of taxes for seven successive years, as well as under a claim of ownership. Now, in order for this to occur, three elements must be met. The property must be actually possessed, the property must be possessed under a claim of ownership, and the taxes on the property must be paid for seven successive years. As we just discussed those first two elements at length, I'll move on straight to the third element of paying taxes for seven successive years. In the present case, we're not dealing with two random pieces of property out in the middle of the country. Instead, we're talking about two parcels of property specifically that were surveyed in 1922. Pursuant to that 1922 survey, Mr. Williams and his family's property, or the property north of the Old Fenton tree line, was known as Outlot 1 in that 1922 survey. And Outlot 1, at that time, Outlot 1 included all of the property up to the Old Fenton tree line. So, just for example, if the 1922 survey were still in place, there would be no dispute as all of that property would be north of the Old Fenton tree line to Mr. Williams' property. Now, of course, new surveys are in place, and that's why we're here today. However, as extremely relevant to this matter, the Williams County Assessor's Office still utilizes the 1922 survey when assessing the taxes. Thus, Mr. Williams and his family have been taxed for all of the property north of the Old Fenton tree line since they moved there in 1962. My opposing counsel points out that there was an error in the aerial map, and a new aerial map was available. He's correct, and that was pointed out in trial. However, it was made extremely clear by Mr. Doug Marlow, an assistant at the Williams County Assessor's Office, that the 1922 survey is still used today. That aerial map did not affect how the properties were taxed, and it was made unequivocally clear on pages 77 and 86 of the record that Mr. Williams and his family have always paid the taxes solely on that property. Okay? Now, overall, the evidence presented at trial regarding the taxes clearly show that Mr. Williams and his family had paid the taxes for seven successive years in addition to actually possessing the property and under the planning right. Now, overall, this evidence presented was clear that Mr. Williams and his family have acquired title with the property at issue via adverse possession and via payment of taxes with colored title, and the circuit court's decision should be affirmed.  No, thank you. Thank you for your time and consideration. Rebuttal. Your Honors, the Defendant's Counsel argues that the defendant built... their defendant's family built a red shed on the property, seeming to imply that the red shed was built on the adversely-possessed area. The red shed does not sit in the adversely-possessed area. It may sit on the line. It does not sit in the wooded area. It is north of the wooded area and not in the adversely-possessed property. Furthermore, the defendant himself did not build the red shed, and the defendant himself does not maintain it as proven by Plaintiff's Group Exhibit No. 5. The defendant also makes the argument that even if you do not meet the element of continuous, that the defendant still has a claim for adverse possession because his parents had the claim matured during their ownership of the property. This seems to imply a theory of tacking, which I believe the law on tacking is that the adverse possession elements must still be in existence and must still be proven by strict, clear, and unequivocal evidence. The Defendant's Counsel also argues that the defendant built the fence. I turn your attention to the record, page 131, Question to the Defendant. It is also accurate that the old fence line that you claimed in the boundary was already there when your parents bought it in 62. The answer? Yes. Question? You don't know who built that fence. Answer? No, I don't. The 20-year period that the defendant testifies to of meeting the elements of adverse possession goes back to a time period before the defendant owned the property, when his parents owned it. Page 133 in the record and in the transcript tells us that continuous use had been broken for 20 years. I turn your attention to the transcript. The question? I think you testified that this 16-foot swath has been in nothing but trees and had a fence row and stuff for at least 20 years. The answer? Oh, more than 20 years. A few lines down, line 19. My question to you, what have you done to exercise control over this strip from here all the way back? The answer of the defendant? Just let the trees grow. I have nothing further. Thank you. We appreciate your arguments this morning. We'll take the matter under advisement and provide you with a decision on the earliest possible date. Thank you again.